**UNITED STATES of America ex rel. Robert COSTA and Ronald Thornburg and**

**State of California ex rel. Robert Costa and Ronald Thornburg, Plaintiffs,**

v.

**BAKER & TAYLOR, INC., et al., Defendants.**

No. C–95–1825–VRW.

United States District Court, N.D. California.

Jan. 16, 1997.

As Amended March 28, 1997.

---

Gail Killefer, U.S. Attys. Office, San Francisco, CA, Diana J. Younts, U.S. Dept. of Justice, Commercial Litigation Branch Civil Div., Washington, DC, for U.S.

John R. Phillips, Peter W. Chatfield, Phillips & Cohen, San Francisco, CA, for Robert Costa and Ronald Thornburg.

Larry G. Raskin, Ca. State Atty. Gen., Sacramento, CA, for State of Cal.

### ORDER

WALKER, District Judge.

Relators Robert Costa and Ronald Thornburg filed this False Claims Act case on behalf of the United States and the State of California on June 1, 1995. In their complaint, relators allege that Baker & Taylor Books ("B & T") has engaged in a practice of fraudulently overcharging institutional customers, including federally funded libraries. Pursuant to 31 U.S.C. § 3730, the complaint was filed under seal and served on the government. On August 21, 1995, the court granted the government's first request for a six-month extension of time to make its intervention determination. The court granted further six-month extensions of time on March 1, 1996, and August 6, 1996. On December 10, 1996, relators' moved to lift the seal on this case file in order to make a limited disclosure to relator Costa's employer, the City of Richmond, Virginia. Upon receipt of this motion, the court issued an order to show cause why the seal in this case should not be lifted in its entirety and the complaint served upon the defendants.

Title 31 U.S.C. § 3730(b)(2) provides that a private party bringing suit on behalf of the government should file the complaint in camera and further provides that the file is to be kept under seal for at least 60 days. The court may grant extensions of that time, at the request of the government, for good cause shown. 31 U.S.C. § 3730(b)(3). The government must elect, before the file is unsealed, whether to intervene in the action or to inform the court of its decision not to do so. 31 U.S.C. § 3730(b)(4).

When Congress amended the False Claims Act in 1986 to create the current statutory framework, it sought to foster more qui tam lawsuits. S.Rep. No. 345, 99th Cong., 2d Sess 23–24 (1986), reprinted in 1986 USCCAN 5266, 5288–89. The Justice Department had expressed concern, however, that the filing of a lawsuit by a private party might "tip off" the subject of a criminal investigation. Id. at 24, reprinted at 5289. The sixty-day period during which the complaint would be sealed was intended as a compromise, allowing the government to complete its investigation and formulate and adopt a litigation strategy without seriously injuring the interests of the defendant. Id.

There is nothing in the statute or legislative history to suggest that, in evaluating requests for such extensions, the court should disregard the interests of the defendant and the public. Defendants have a legitimate interest in building their defense while the evidence is still fresh. The public

has a right to monitor the activities of government agencies and the courts.

In this case, the government appears to be fully engaged in its discovery, without giving the defendants the opportunity even to answer the complaint. The government's return to the order to show cause states that each of the defendants has been served with a subpoena, investigative interviews have been conducted with numerous current and former B & T employees and government personnel have been criss-crossing the country to conduct interviews and audits. The memorandum further suggests that the government has engaged in settlement negotiations with B & T. The defendants are proceeding in these matters based on plaintiffs' representations. They are apparently discussing the settlement of a case without knowing with certainty the allegations leveled against them. Each of the plaintiff parties has suggested that keeping the file under seal serves defendants' interests by avoiding unflattering publicity; the court is not, however, convinced that defendants' current state of ignorance is a blissful one.

It is possible that defendants wish to keep this case from the public eye, but the court must also consider the interest of the public. Court records are normally open to the public. *Nixon v. Warner Communications,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents" (citations omitted)). One interest this access has been thought to protect is "the citizen's desire to keep a watchful eye on the workings of public agencies." *Id.* at 597–98, 98 S.Ct. at 1312. In this case, defendants are accused of defrauding federal, state and local agencies across the country. Many of those agencies continue to purchase books from B & T, and do so without benefit of the information developed by the government's current investigation. The proceedings of this case, therefore, fall well within the bounds of that which citizens may wish to observe.

The legislative history of the False Claims Amendments Act makes abundantly clear that Congress did not intend that the govern-

ment should be allowed to prolong the period in which the file is sealed indefinitely. The Senate report states:

> Subsection (b) (3) of section 3730 establishes that the Government may petition the Court for extensions of both the 60-day evaluatory period and the time during which the complaint remains under seal. Extensions will be granted, however, only upon a showing of "good cause." The Committee intends that courts weigh carefully any extensions on the period of time in which the Government has to decide whether to intervene and take over the litigation. The Committee feels that with the vast majority of cases, 60 days is an adequate amount of time to allow Government coordination, review and decision. Consequently, "good cause" would not be established merely upon a showing that the Government was overburdened and had not had a chance to address the complaint. While a pending criminal investigation of the allegations contained in the qui tam complaint will often establish "good cause" for staying the civil action, the Committee does not intend that criminal investigations be considered an automatic bar to proceeding with a civil fraud suit.

> The Committee believes that if an initial stay is granted based upon the existence of a criminal investigation, the court should carefully scrutinize any additional Government requests for extensions by evaluating the Government's progress with its criminal inquiry. The Government should not, in any way, be allowed to unnecessarily delay lifting of the seal from any civil complaint or processing of the qui tam litigation.

S.Rep. 345, 99th Cong., 2d Sess 24–25 (1986), reprinted in 1986 USCCAN 5266, 5289–90. The "good cause" requirement of the statute is, therefore, a substantive one, which the government can only satisfy by stating a convincing rationale for continuing the seal. In this case, the government has utterly failed to meet that burden.

In its memorandum, the government asserts three arguments why the court should not lift the seal on the files in this case.

First, the government asserts that it has not had a sufficient opportunity, after nearly eighteen months, to make its decision regarding intervention. This is not a legitimate reason to maintain the seal. The above-quoted portion of the Senate report on this amendment states unambiguously that Congress viewed sixty days as sufficient time to make the intervention decision. Given nine times that long, the Justice Department ought to have been able to make up its mind. The court notes that the State of California, while maintaining the same untenable position as the government, demonstrated greater candor by admitting in its memorandum that it determined long ago that the accusations had merit and is now seeking information only about the scope of the damage. This practice of conducting one-sided discovery for months or years while the case is under seal was not contemplated by Congress and is not authorized by the statute.

The government next claims that lifting the seal might interfere with the related criminal investigation. Again, the Senate report quoted above indicates that Congress did not intend for the mere presence of an on-going investigation to forestall the termination of the seal. If the government could plausibly argue that some aspect of its criminal investigation would be jeopardized by prematurely "tipping-off" the defendant, perhaps the seal would be justified. See id at 16, reprinted at 5281 (seal established in response to Justice Department concerns that civil complaints might "tip off" subjects of criminal investigations). Such a circumstance does not exist here. The government has issued subpoenas to each of the defendants and has interviewed numerous current and former employees of B & T. The proposition that defendants are currently unaware of the investigation or its general nature, therefore, defies reason. The government suggests that discovery by defendants in the civil case might hamper the criminal investigation. The statute, however, provides that the court may stay discovery in the civil case if the government can establish that such discovery would interfere with its investigation. 31 U.S.C. § 3730(c)(4). Because the statute provides this alternative means of protecting the criminal investigation from the prying eyes of defendants, the government's concern about discovery in the civil case provides no basis to maintain the seal.

It may be that the pendency of the criminal investigation will interfere with the progress of the civil case. Clearly, the defendants will be disinclined to settle the civil matter without addressing the potential for criminal liability. Moreover, if the government seeks to limit discovery by means of 31 U.S.C. § 3730(c)(4), the civil case will proceed more slowly than normal. Neither of these possibilities, however, justifies maintaining the seal in this case. Congress anticipated the difficulties resulting from simultaneous civil and criminal actions and made the accommodations it deemed appropriate. Those accommodations did not include an indefinite period during which the case would remain under seal.

Finally, the government argues that lifting the seal would interfere with settlement negotiations. In short, the government suggests that the settlement value of the case will decline if the government cannot offer defendant the benefit of never making these charges public. First, one cannot help wondering whether the fact that the defendants must guess about the case filed against them is not the more significant settlement advantage currently enjoyed by the government. Even if the advantages to defendants of maintaining the veil of secrecy were the more important issue, such a concern clearly falls outside of the rationale for the statutory seal provision. Congress enacted the seal provision to facilitate law enforcement, not to provide an extra bargaining chip in settlement negotiations. Moreover, a settlement guaranteeing that the allegations of the complaint would never come to light would utterly frustrate the public's interest in monitoring the workings of government.

Given the government's failure to provide a single cogent reason to maintain the seal in this case, good cause to do so clearly does not exist. The court notes with regret that when the earlier extensions were granted in this case, the effects of inertia and the lack of an opposing party may have resulted in a less searching inquiry regarding good cause than

is appropriate. Unfortunately, the relative ease of granting, rather than denying, these extensions may too often lead courts to prolong unnecessarily the period of the seal. Were it not for the unusual circumstance presented by Costa's difficulties with his employer, this case may have continued on that track even longer. As it happens, the case did come to the court's attention and the proper inquiry has now been made and the government's arguments have been found inadequate.

For the foregoing reasons, the government is directed to make its election regarding intervention not later than January 31, 1997. Without regard to whether the government or the state decide to proceed with the case, the party prosecuting the case is directed to serve the defendants with the summons and complaint not later than January 31, 1997. The clerk is directed to unseal the file on that date. Relator Costa may divulge information related to this case to the City of Richmond as of the date of this order.

IT IS SO ORDERED.