UNITED STATES of America ex rel. Glenda MARTIN and State of Tennessee ex rel. Glenda Martin, Plaintiffs / Relator,

v.

### LIFE CARE CENTERS OF AMERICA, INC., Defendant.

United States of America ex rel. Tammie Johnson Taylor, Plaintiff / Relator,

v.

Life Care Centers of America, Inc., Defendant.

Case Nos. 1:08–cv–251, 1:12–cv–64.

United States District Court, E.D. Tennessee, at Chattanooga.

Nov. 15, 2012.

Elizabeth S. Tonkin, U.S. Department of Justice Office of U.S. Attorney, Knoxville, TN, G. Mark Simpson, Simpson Law Firm, LLC, Jonesboro, GA, Michael A. Sullivan, Finch McCranie, LLP, Atlanta, GA, George S. Bell, III, Office of the Attorney General, Nashville, TN, Jonathan H. Gold, Joyce R. Branda, Polly A. Dammann, U.S. Department of Justice Washington, DC, for Plaintiff/Relator.

## *ORDER*

HARRY S. MATTICE, JR., District Judge.

### I. BACKGROUND

On October 16, 2008, Relator Glenda Martin filed a *qui tam* Complaint—on behalf of herself, the United States, and the State of Tennessee—against Defendant Life Care Centers of America, Inc., pursuant to the False Claims Act ("FCA" or "the Act"), 31 U.S.C. §§ 3729 *et seq.*, and the Tennessee Medicaid False Claims Act ("TMFCA"), Tenn.Code Ann. §§ 71–5–181 *et seq.* (Doc. 1).[1] On October 20, 2008, the Court entered a Sealed Order, stating that "[t]his case shall be filed *in camera* and shall remain under seal for at least sixty . . . days, pursuant to 31 U.S.C. § 3730(b)(2). No pleadings or other documents shall be provided to, or served on, Defendant until further order of the

---

1. Two related cases are proceeding simultaneously before the Court: *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.,* Case No. 1:08–cv–251, and *United States ex rel. Taylor v. Life Care Ctrs. of Am., Inc.,* 1:12–cv–64. When appropriate, the Court will identify in its citation which record contains the cited material. Given the substantive overlap between the motions filed in each case, unless otherwise specified, all citations refer to the docket as established in *Martin.*

Court.... Under no circumstances shall the names of the parties or the existence of the lawsuit be publicly disclosed or otherwise disclosed to Defendant, in any manner, while this Order remains in effect." (Doc. 3).

On January 7, 2009, the Government (i.e., the United States) filed an "Application for Extension of Time to Notify Court of Election" pursuant to 31 U.S.C. § 3730(b)(3), seeking a nine-month extension of the seal period, during which it could determine whether to intervene in the action.[2] (Doc. 5). Citing the FCA's legislative history (specifically, S.Rep. No. 99–345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266), the Government asserted that "[u]nder the False Claims Act's *qui tam* provisions, a *qui tam* complaint is kept under seal to allow the Government to inquire into the relator's allegations, evaluate the evidence, and determine whether to intervene." (Doc. 5). As a basis for its initial request, the Government averred that the case "consists of numerous allegations requiring an extensive investigation," and "due to the complexity of the issues involved ... the United States will need at least an additional **nine months** to complete its analysis and evaluation and make its decision as to whether to intervene in this action...." (*Id.*) (emphasis original). In support, the Government provided the affidavit of an Assistant United States Attorney. (Doc. 8). That affidavit reiterated the intricacy of the case and identified an ongoing large-scale investigation involving the Tennessee Bureau of Investigation, various United States Attorney's Offices, and the Office of Inspector General for the United States Department of Health and Human Ser-

vices ("HHS"). (*Id.*). Adequately summarized, the affidavit stated that more time was required because the Government's resources were insufficient in view of the complexity of the litigation.

United States Magistrate Judge William B. Carter granted the Government's request. (Docs. 11). In so doing, he "strongly encourage[d] the putative intervenor to reach a prompt decision on whether to intervene." The Magistrate Judge allowed the Government and Tennessee through June 28, 2010 to determine whether to intervene.

On June 28, 2010, the Government filed a second Motion for an extension of the seal period and the time in which to intervene. (Doc. 17). The Motion was substantially identical to its earlier request, restating the same concerns regarding the complexity of this case, relying on an affidavit from the Assistant United States Attorney, and citing the same legislative history. After a hearing, the Court granted a further six-month extension, providing the Government until December 28, 2010 to determine whether to intervene. (Doc. 27).

On December 16, 2010, the Government filed a status report, accompanied by a third Motion for an extension of time in which to intervene. (Docs. 28, 29). In the report, the Government asserted that it was conducting a "nationwide investigation" into Defendant for fraudulent Medicare claims similar to those raised in this action. (Doc. 28). The Government stated that it "continues to devote substantial time and resources to this investigation," and it noted that the investigation involved over 150 witnesses across the country. The Government further stated that HHS intended to issue several additional admin-

---

2. Shortly thereafter, Tennessee filed a Motion seeking a corresponding extension of time. (Martin, Doc. 9). Unless otherwise specified, each of the Government's requests for extensions of time described herein were shortly followed by a corresponding motion from Tennessee, and each ruling on those motions applied to both putative intervenors. (*See, e.g., Martin*, Docs. 5, 9, 11, 12, 17, 19, 27, 29, 30).

istrative subpoenas to aid in its investigation. Finally, the Government averred that it had "begun preliminary settlement discussions" and that after making a "lengthy and detailed presentation" to Defendant regarding the result of its investigation, Defendant requested time to consider the information presented. The Government added that the potential for settlement "may lead to a resolution that would avoid the need for litigating the action in this Court." It anticipated that it "will need no less than an additional nine months to one year before it will be in a position to make a final intervention decision and that additional further extensions may be likely." It suggested that the Court enter an indefinite extension of the period in which the case would remain under seal (and in which the Government could elect to intervene) and administratively close the case for statistical purposes.

The Court acceded to the Government's request. On January 13, 2011, the Court granted an indefinite extension of time in which the Government could make its intervention determination, and it ordered that the case be administratively closed. (Doc. 32). The Court ordered the Government and Tennessee to "work diligently to make their decision as to intervention in the case...."

In March 2012, the Southern District of Florida transferred to this District a similar *qui tam* case against the same Defendant: *United States ex rel. Taylor v. Life Care Ctrs. Of Am., Inc.*, Case No. 1:12–cv–64. (*Taylor*, Doc. 1). Shortly thereafter, the Government moved to consolidate the two cases. (Doc. 44; *Taylor*, Doc. 4).

On September 14, 2012, the Court held a status conference regarding the Government's Motions to Consolidate, at which attorneys for the United States, the State of Tennessee, and the Relator were present. Also present in the courtroom's gallery was a member of the news media, employed by putative intervenor Chattanooga Publishing Company ("CPC"). The Government objected to his presence and moved the Court to close the courtroom. The Court directed the parties—including counsel for the media outlet, who appeared upon the Court's request—to brief two issues: (1) whether all filings in this case should remain sealed, and (2) whether the Court should close all future Court proceedings to members of the public. (Doc. 55; *Taylor*, Doc. 10). The hearing was adjourned, and the parties did not address the status of the actions.

CPC thereafter moved to intervene for the limited purpose of opposing the Government's request to close the courtroom and keep the record under seal. (Docs. 56, 63; *Taylor* Doc. 11). Based on information CPC's representative was able to obtain at the hearing (i.e., the case style and case number), it deduced that the case was initially filed in 2008 and that it was a *qui tam* action. Citing various courts to lament the Government's apathetic pace when deciding whether to intervene in *qui tam* actions, CPC asserted that the Government's four-year delay exceeded the FCA's contemplated boundaries, and it urged the Court to unseal the record and make the proceedings public.

On October 1, 2012, the Government notified the Court of its election to intervene in part in this action. (Doc. 60; *Taylor*, Doc. 15). Tennessee declined to intervene in *Martin*, the only case to which it was a party. (Doc. 61). In electing to intervene in part, the Government requested that the docket remain under seal, excepting only "[R]elator's Complaint, this Notice [i.e., Doc. 60; *Taylor*, Doc. 15] and the attached proposed Order...."[3] (*See*

---

**3.** In fact, the Government had earlier moved the Court to enter a prospective Order direct-

Docs. 58, 60; *Taylor,* Docs. 13, 15). In a subsequent *ex parte* filing, (Doc. 64; *Taylor,* Doc. 17), the Government revised its position. It acknowledged that the file in this matter should be unsealed, but it requested that a select subset of documents remain under seal.[4] The Government requested the continued sealing "to protect the identity of cooperating witnesses until such time as the [G]overnment may be compelled to disclose their identities under applicable rules of discovery." (*Taylor,* Doc. 17 at 2; *see* Doc. 64 at 3).

Thus, several Motions are presently before the Court: the Government's Motion to Consolidate cases (Doc. 44; *Taylor,* Doc. 4); CPC's limited Motion to Intervene (Doc. 56; *Taylor,* Doc. 11); and the Government's Amended Motion to Unseal (Doc. 58; *Taylor,* Doc. 13), as modified by its Notice of Election to Intervene in Part (Doc. 60; *Taylor,* Doc. 15) and sealed *ex parte* filing (Doc. 64; *Taylor,* Doc. 17).

## II. ANALYSIS

### A. The Government's Motion to Consolidate

■ Based on the Government's representations and the Court's independent review, it appears that the above-styled cases involve common questions of law and fact concerning Defendant's potential violations of the FCA. Accordingly, the Court will **GRANT** the Government's Motion to Consolidate (Doc. 44; *Taylor,* Doc. 4), and **ORDER** that the above-captioned cases be consolidated pursuant to Fed.R.Civ.P. 42(a)(2). *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.,* Case No. 1:08–cv–251 shall be designated the lead case, and all future filings shall be submitted under that caption.

### B. CPC's Limited Motion to Intervene

■ At the Court's invitation, CPC filed a Motion to Intervene for the limited purpose of opposing the Government's request to close the courtroom and maintain this case under seal. (Doc. 56; *Taylor,* Doc. 11). That Motion will be **GRANTED,** and CPC will be permitted to intervene for the stated limited purpose. Because CPC has no interest in this case beyond the disposition of matters presently before the Court, it will not be added as a party-in-interest on the Court's docket.

### C. Motion to Unseal

All parties agree that the majority of the record in this case should be unsealed. (*See* Docs. 63, 64, 66; *Taylor,* Doc. 17). The Government asks the Court to keep five documents sealed to "protect the identity of cooperating witnesses," at least until the Government is required to disclose those witnesses' identities under the rules of discovery. (Doc. 17; *Taylor,* Doc. 64).

The FCA imposes liability on any person who, among other things, knowingly presents the United States with a false or fraudulent claim for payment. *See* 31 U.S.C. § 3729. It also enables private individuals to bring suits for violations of § 3729 in the Government's name. 31 U.S.C. § 3730(b). In such *qui tam* cases, the FCA dictates that the relator's complaint must be filed under seal and remain sealed for 60 days:

---

ing that the seal be lifted if and when the Government decided to intervene. (Doc. 57; *Taylor,* Doc. 12). For reasons that should be obvious, the Court refused to do so. It is not the Government's place to dictate the course of litigation in this Court, and the Court will not enter an Order with effect that is contin-

gent on some potential future action taken by the parties.

4. Recognizing the possibility that those documents may remain under seal, the Court will not specifically identify them here.

A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2); *see also United States ex rel. Summers v. LHC Grp., Inc.,* 623 F.3d 287, 291–92 (6th Cir.2010) (discussing in depth the history and purposes of the FCA's "under-seal" requirement).

■■■ The mandate that a *qui tam* complaint be filed under seal affords the Government "the chance to determine whether it was already investigating the claims stated in the suit and then to consider whether it wished to intervene prior to the defendant's learning of the litigation." *Summers,* 623 F.3d at 292 (quotation omitted). This requirement "served to prevent alleged wrongdoers from being tipped off that they were under investigation." *Id.* (quotation omitted). "Thus the primary purpose of the under-seal requirement is to permit the Government sufficient time in which it may ascertain the status quo and come to a decision as to whether it will intervene in the case filed by the relator." *Id.*

Under certain circumstances, the Government may seek an extension of the sixty-day sealing period. "The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal.... Any such motions may be supported by affidavits or other submissions in camera." 31 U.S.C. § 3730(b)(3).

■■ The length of time this case has remained under seal borders on the absurd. The Government has finally acknowledged—four years after Relator filed her initial Complaint—that the statutorily prescribed sealing period should expire. But only in part: it asks the Court to extend the seal once more with respect to certain documents in the record. Put generously, the Government's handling of this matter leaves much to be desired. It appears to the Court that the Government's pre-intervention strategies approach the abusive, and, in any event, fall well beyond the contemplation of the FCA. Several elements of its conduct merit specific mention.

■■ The Court concludes that the Government has stretched the FCA's "under-seal" requirement to its breaking point. *Qui tam* complaints under the FCA are temporarily sealed by statute to enable the Government to perform a relatively straightforward task: "ascertain the status quo and come to a decision as to whether it will intervene...." *Summers,* 623 F.3d at 292. In this case, however, the Government apparently used the under-seal period as a means of conducting unchecked discovery in an effort to build a more complete case against Defendant. The Government, by its own admission: conducted an extensive "nationwide investigation" (interviewing over 150 witnesses); issued over 35 administrative subpoenas (to which Defendant responded by producing approximately 200,000 documents); analyzed approximately 360 medical charts (each ranging from 250 to 900 pages); reviewed "additional evidence [it] uncovered regarding the amount of potential damages"; and invoked the assistance of 7 United States Attorneys' Offices, 4 attorneys from the Commercial Litigation Branch of the Department of Justice, and 10 HHS agents. (*See, e.g.,* Docs. 36 at 3,

42 at 2). As another court has held: "This practice of conducting one-sided discovery for months or years while the case is under seal was not contemplated by Congress and is not authorized by the [FCA]." *United States ex rel. Costa v. Baker & Taylor, Inc.*, 955 F.Supp. 1188, 1191 (S.D.Cal.1997).[5]

The actions the Government took in the course of its investigation are also indicative of significant overreach. The Government readily (and repeatedly) asserts that it approached Defendant in attempts to settle this case. (Doc. 28 at 4–5; Doc. 36 at 3; Doc. 42 at 2). Indeed, it admits that it "made a lengthy and detailed presentation to Life Care on June 25, 2010, regarding the result of its investigation." (Doc. 28 at 4–5). How this squares with the fundamental function of the FCA's under-seal requirement (i.e., "prevent[ing] alleged wrongdoers from being tipped off that they were under investigation") entirely escapes the Court.[6] *Summers*, 623 F.3d at 292, (Doc. 3); *see also Costa*, 955 F.Supp. at 1191 ("Congress enacted the seal provision to facilitate law enforcement, not to provide an extra bargaining chip in settlement negotiations."). Ignoring for

the moment that the Government's actions directly undermine a primary reason for sealing *qui tam* actions in general, its conduct clearly demonstrates that it had determined intervention was appropriate as early as June 2010. It defies logic to suggest that the Government would give Defendant a "lengthy and detailed" report of an investigation and attempt to obtain a settlement based on claims that it did not intend to pursue.

In retrospect, the Court has determined that the Government's habitual requests for extensions of the election period were wholly inappropriate. The Act prescribes a narrowly defined 60–day period in which the Government may elect to intervene in a *qui tam* suit. 31 U.S.C. § 3730(b)(2). Congress did not arrive at this 60–day period by mere happenstance. The very same legislative history quoted by the Government in support of its repeated motions for extension of time addresses the issue quite acutely, albeit in a section the Government left uncited:

> Keeping the *qui tam* complaint under seal for the initial 60–day time period is intended to allow the Government an adequate opportunity to fully evaluate

---

**5.** The Court recognizes that, under the FCA, the Government may issue "Civil Investigative Demands" ("CIDs") before making an election under § 3730(b). *See* 31 U.S.C. § 3733. Here, the Government availed itself of that opportunity, issuing a June 23, 2011 CID to Defendant "in order to gather evidence material to filing a complaint in this matter." (Doc. 42). A CID is a "particular type of investigative tool," analogous to an administrative subpoena, that "enable[s] the Government] to investigate whether there is a basis for remedying a false claim made against the United States." *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir.1995). While the FCA empowers the Government to conduct some pre-intervention discovery, it is not unlimited: "Congress intended the false claims CID to provide the Department of Justice with a means to assess quickly, and at the least cost to the taxpayers or to the party from

whom information is requested, whether grounds exist for initiating a false claim suit under 31 U.S.C. §§ 3729–32...." *Id.* at 979. In this case, the Government appears to believe itself unconstrained by concerns of either timeliness or taxpayer expense.

**6.** The United States Magistrate Judge signed a November 23, 2009 Order, in which he partially lifted the seal on this case, permitting the Government to disclose a copy of the Complaint to Defendant (as well as to other courts, relators, and states involved in similar *qui tam* actions against Defendant). (Doc. 15). In all other respects, the seal remained in place. (*Id.*). The degree to which the Magistrate Judge unsealed the Complaint was narrowly defined, and nothing in his November 23 Order abates the concerns articulated here.

the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action. . . .

Subsection (b)(3) of section 3730 establishes that the Government may petition the Court for extensions of both the 60-day evaluatory period and the time during which the complaint remains under seal. Extensions will be granted, however, only upon a showing of 'good cause'. *The. Committee intends that courts weigh carefully any extensions on the period of time in which the Government has to decide whether to intervene and take over the litigation. The Committee feels that with the vast majority of cases, 60 days is an adequate amount of time to allow Government coordination, review and decision. Consequently, 'good cause' would not be established merely upon a showing that the Government was overburdened and had not had a chance to address the complaint.* While a pending criminal investigation of the allegations contained in the qui tam complaint will often establish 'good cause' for staying the civil action, the Committee does not intend that criminal investigations be considered an automatic bar to proceeding with a civil fraud suit.

The Committee believes that if an initial stay is granted based on the existence of a criminal investigation, the court should carefully scrutinize any additional Government requests for extensions by evaluating the Government's progress with its criminal inquiry. *The Government should not, in any way, be allowed to unnecessarily delay lifting of the seal from the civil complaint or processing of the qui tam litigation.*

S. Rep. No. 99–345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289–90 (emphasis added).

The Government's sought-after indefinite extension of the sealing and election period lies well beyond the permissible scope of the FCA. Regrettably, the Court bears some responsibility for the Government's mishandling of this litigation. Based on the Government's representations concerning the complexity of the case and the lack of resources needed to prepare, it was the Court that granted the requested extensions. This may have been a function of the press of other matters on the Court's docket, the absence of any opposing party to object, or the comfortable routine in which extensions were heretofore granted. *See, e.g., Costa,* 955 F.Supp. at 1191–92 (noting "with regret" that in FCA cases, "the effects of inertia and the lack of an opposing party may have resulted in a less searching inquiry regarding good cause than is appropriate" and that "the relative ease of granting, rather than denying, these extensions may too often lead courts to prolong unnecessarily the period of the seal"). Regardless, it has become clear that what was once routine appears contrary to the commands of the FCA.

In hindsight, the Government's stated reasons were insufficient bases on which to obtain the interminable extensions afforded in this case. The Government's implicit claim that it was overburdened is puzzling in view of the purported significant resources expended in furtherance of its investigation. In any event, " 'good cause' [is not] established merely upon a showing that the Government was overburdened and had not had a chance to address the complaint." S.Rep. No. 99–345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289–90 (emphasis added). To the extent that the Government alleged that the pre-intervention investigation was overly complex, that complexity was likely a product of the Government's own extra-statutory discovery efforts, discussed above. The Govern-

ment has not otherwise demonstrated that this case is somehow different from the "vast majority" of cases for which Congress explicitly determined a 60–day election period would be adequate. *See id.* Indeed, it took the Government approximately 24 times that long to make up its mind. In a word, that is unacceptable.

While the Court must concede error in granting the Government's Motions to extend the under-seal period, it is an error the Court does not intend to repeat. To that end, the Government is put **ON NOTICE** that, in all future *qui tam* proceedings under the False Claims Act, the Court will expect the Government to provide notice regarding its intervention within the statutorily mandated 60–day period. Should the Government seek to extend the period in which it may elect to intervene (and, thus, the period in which the case remains under seal), the Court will expect it to delineate a clear rationale for the extension in view of the statute's substantive "good cause" requirement. Given the Government's conduct in this action and other *qui tam* cases before this Court, such requests will be met with significant scrutiny—allegations regarding a lack of resources or manufactured complexity simply will not suffice.

■ Turning now to the instant Motion to unseal, the Court cannot conclude on the information before it that the FCA permits yet another extension of the sealing period, even in part, especially after the Government has already elected to intervene. On its face, the FCA contemplates a fairly straightforward process for *qui tam* claims: the relator files a complaint under seal, and within 60 days, the Government determines whether it wishes to intervene, at which time the complaint is unsealed and served upon the defendant. *See* 31 U.S.C. § 3730(b); S.Rep. No. 99–345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289. Clearly, the FCA contem-

plates lifting the seal on the relator's complaint once the Government has decided whether to intervene, but as this Court recently concluded in another proceeding, it is silent as to the continued sealing of other documents. *See United States ex rel. Reeves v. Merrick & Co.*, Case No. 3:11–cv–430 (E.D.Tenn. Sept. 14, 2012); *United States ex rel. Littlewood v. King Pharm., Inc.,* 806 F.Supp.2d 833, 842–43 (D.Md.2011). In short, nothing in the text of the FCA authorizes what the Government now requests (i.e., an indefinite seal on record materials beyond the Complaint). While the FCA does allow the Government to support motions for extension of the sealing period with "affidavits or other submissions in camera," the materials the Government now seeks to retain under seal are not supporting documents for their requested extensions. 31 U.S.C. § 3730(b)(3).

Even assuming the FCA were to permit the continued and indefinite sealing of certain documents—itself a dubious proposition—it seems clear that the Government would be required to demonstrate "good cause" as a prerequisite. *See* 31 U.S.C. § 3730(b)(3); *Reeves,* Case No. 3:11–cv–430 (Doc. 14 at 2). Here, the Government initially sought an extension of the sealing period for all but specified documents because the remainder of the record was "provided by law to the Court alone for the sole purpose of evaluating whether the seal and the time for making an election to intervene should be extended." (Doc. 58; *Taylor,* Doc. 13). In light of this Court's Order in *Reeves,* the Government later abandoned that untenable position. (Doc. 64; *Taylor,* Doc. 17). Now, it instead seeks to retain certain documents under seal to "protect the identity of cooperating witnesses until such time as the [G]overnment may be compelled to disclose their identities under applicable rules of discovery." (*Taylor,* Doc. 17; *see* Doc. 64).

Mindful of the "long-established legal tradition" which values public access to court proceedings, the Court cannot say based on the information before it that the Government has demonstrated good cause sufficient to support its request. *See Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996). The disclosure of a witness the Government will almost certainly be required to provide during discovery does not outweigh the "strong presumption in favor of public access to judicial proceedings." [7] *Elliott Co. v. Liberty Mut. Ins. Co.*, —— Fed.Appx. ——, ——, 2009 WL 750780, at *9 (6th Cir. Mar. 23, 2009). Indeed, the Government's request appears to be an ambitious attempt to shield its case from scrutiny for as long as possible, yet again employing the FCA's extension provision as a dilatory weapon. Simply put, that is not the purpose of § 3730(b)(3), and the Court will not permit it to be so used here.

Thus, the Court will **DENY** the Government's request to retain certain documents under seal (Docs. 58, 64; *Taylor*, Docs. 13, 17), and it will order that this case be unsealed in its entirety. Nevertheless, the Court will **STAY** the unsealing of this case until **November 30, 2012,** at the earliest. If the Government wishes to persist in its request to retain certain documents under seal, it may file a motion to that effect **no later than November 26, 2012.** Should the Government elect to file such a motion, it must: define precisely which documents it believes should remain sealed; state clearly any bases on which the information should remain sealed (e.g., Fed.R.Civ.P. 26(c)); and identify why the Government's interest in having the material sealed outweighs the strong presumption in favor of public access to this Court's records.

When appropriate, the Court will enter a separate order lifting the seal and directing service of the Complaint.

## III. CONCLUSION

Accordingly, and for the reasons stated:

- The Government's Motion to Consolidate (Doc. 44; *Taylor*, Doc. 4) is hereby **GRANTED.** The above-captioned cases are **CONSOLIDATED** pursuant to Fed.R.Civ.P. 42(a)(2). *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, Case No. 1:08–cv–251 is to be designated the lead case, and all future filings shall be submitted under that caption.

- Chattanooga Publishing Company's limited Motion to Intervene (Doc. 56; *Taylor*, Doc. 11) is hereby **GRANTED.** Because CPC has no interest in this case beyond the disposition of matters immediately before the Court, it will not be added as a party-in-interest on the Court's docket.

- The Government's request to retain certain documents under seal (Docs. 58, 64; *Taylor*, Docs. 13, 17) is hereby **DENIED WITHOUT PREJUDICE.** Should the Government persist in its request to retain certain documents under seal, it may file a motion to that effect **no later than November 26, 2012,** so long as that motion complies with the terms specified in this Order.

- The Court **STAYS** the unsealing of this case until **November 30, 2012,** at the earliest. When appropriate, the Court will enter a separate order lifting the seal and directing service of the Complaint;

---

**7.** This is especially true in *Martin,* where the filings the Government seeks to seal do not even identify "the witness by name, [but] the witness is identified by position or other information, and it may be possible for the defendant or others familiar with the underlying facts and allegations to infer who the witness is." (Doc. 64 at 3).

- The Clerk of Court is **DIRECTED** to file this Order under seal.